BARBER et al. v. LOCKWOOD et al.

(District Court, D. Connecticut. February 13, 1905.)

No. 1,412.

1. ADMIRALTY—PLEADING—ISSUES AND PROOFS.

The proofs of the respective parties in admiralty must conform to the issues tendered by their pleadings.

[Ed. Note.—For cases in point, see vol. 1, Cent. Dig. Admiralty, §§ 544–556.]

2. WHARVES—INJURY OF VESSEL FROM BROKEN SPILE—LIABILITY OF WHARF OWNER.

A wharf owner *held* liable for an injury to a barge properly moored to his wharf, from settling with the falling tide upon a broken spile, which could have been discovered and removed by such owner by the exercise of a fair degree of care.

In Admiralty. Suit for injury of barge at respondents' dock.

Peter S. Carter, for libelants.

Warner & Goldschmidt, for defendants.

PLATT, District Judge. This is an action to recover damages which the libelants' barge, the Bright Star, sustained while lying at the defendants' wharf at South Norwalk, Conn., on the 13th day of June, 1903. The fourth and fifth articles of the libel are the important ones:

"Fourth. That on or about the 12th day of June, 1903, the said boat, with her cargo, properly manned and equipped, while lying alongside of or off from said pier, waiting to discharge, and properly fastened, with the fall of the tide her bottom settled upon a sunken spile or rock which was projecting alongside of or off from said bulkhead, wharf, or pier, penetrating the bottom of said boat, and causing her to spring a leak, and she shortly afterwards sank. Said boat had to be raised so that the cargo could be discharged, and the damages which said boat received required it to be placed on a dry dock to have said damages repaired.

"Fifth. That bulkhead, wharf, or pier aforesaid was in an unsafe, dangerous, and unfair condition, or within the limits of the berth at the said place where the libelants' boat was invited to lay at for the receiving and unloading of loaded boats—a fact which was well known to the respondents, and had been known to them for a long time prior to this accident. And as your libelants are informed and believe, other boats sustained damages by coming in contact with the sunken spile or rock."

The fifth article of the answer is also important:

"That said boat, properly manned and equipped, with her cargo, was on or about the 12th day of June, 1903, towed by the steamboat of the libelants to, and arrived off, said pier, bulkhead, or wharf, in the night season, and that the captain of said steamboat told the captain of said barge to lay his said barge a little off said pier or wharf, so that when the tide fell said barge would settle away from said wharf or pier, where she would lie safely. That said barge was not properly or safely fastened to said wharf or pier, but was fastened by one line only from said barge to the northeast corner of said pier or wharf, with her bows within, or so that her bows subsequently swung away from, said pier or wharf of the defendants and into an adjoining slip of one George Warren, which was not used by the defendants, and which they had no right to use, or permit said barge or any other vessel to use, and which the defendants did not authorize the libelants or the said barge or any person to use, and of which use by the said barge or its captain

the defendants had no knowledge. That inside said slip of the said Warren, and inside the harbor line, and the line of the said wharf or pier, to which said barge Bright Star was so improperly fastened, was a sunken spile, upon which said barge rested when the tide fell, and which spile caused said barge, as the defendants believe, to spring a leak, and afterwards to sink; and it became necessary to raise said barge, so that her cargo could be discharged and the damage to said barge repaired."

It is urged by the libelants that defendants' proof does not correspond with the facts alleged to have been true in said article, and should therefore be rejected. Objection was made at the taking of the depositions.

The law is clear that defendants' testimony must accord with the articles of the answer, just as the libelants' testimony must follow the articles of the libel. The parties make up their issues, and must stay by them until the end. McKinlay et al. v. Morrish et al., 21 How. 343, 16 L. Ed. 100. The view which is taken of this case will, however, make it unnecessary to apply strictly the rules of admiralty practice. Allusion is made to the matter now for the benefit of proctors hereafter.

The length of the barge Bright Star was 100 feet on deck and 95 feet on the bottom. It was 23 feet broad on top, and 22 feet on the bottom. The ends were square, and it drew, as loaded at time of accident, 9½ feet. It was in excellent condition. At low water the depth along the front of the wharf was from 4 to 6 feet. At high tide it was about 7 feet deeper. The barge was moored, with its bows to the north, along the front of the wharf, during the evening of June 12, 1893, at about high tide. She was securely fastened with four lines. A stout cable was attached to a bunch of spiles about 18 feet north of the wharf, and substantially in a line therewith. Another cable was fastened to a bunch of spiles some distance south of the wharf, and ropes from amidships were secured to spiles at the two ends of the wharf proper. The wharf had a frontage on the channel of 33.7 feet. The barge was moored so that its width was about the middle of the dock, and the bottom extended about 10 feet beyond the bunch of spiles on the north to which the bow was fastened. Having moored the barge with care, the master retired to his cabin, and remained there with his sick wife. Early in the morning of the 13th it was discovered by the captain of the steam tug Portchester, and by a man who was sent by defendants to work at removing the coal, that the barge was in trouble. She had listed over toward the channel, and was being rapidly filled with water. The cause of the trouble is unanimously conceded to have been that a sunken spile, which had been broken off below the surface of the water, entered her bow about 4 feet from the port side of the bottom, and right underneath the turn of the bow. The only dispute arises over the exact location of that sunken spile. On this point the testimony is quite as contradictory and unsatisfactory as it usually is in admiralty causes. The defendants attempt to show that the sunken spile was certainly no nearer, and probably a little farther off, the channel than the bunch of spiles to which the boat was fastened; that it was some 10 or 12 feet north of the bunch of spiles, and was on the prop-

erty of the next dock owner to the north, one George Warren, and beyond the control of the defendants; and then they argue that they cannot be held responsible for a defect in their neighbor's wharfage. These things the libelants claim that the defendants cannot show, because they alleged an entirely different state of things in their answer; but, as I said at the beginning, it is unnecessary to pass upon that question, because I cannot follow the defendants in their contention. I cannot adopt the facts exactly as the defendants urge them, and I cannot accept the law which they seek to apply to the facts which they consider established.

Hansen was a diver employed by the Baxter Wrecking Company, and examined the wreck while the schooner Fly was pumping out the water. He found the scow canting a very little bit offshore, and a little away from the dock. He locates the sunken spile as 25 or 30 feet from, and off the end of, the dock. His location of the sunken spile, in so far as it affects its relation to the bunch of spiles then existing, is probably inaccurate, but it certainly carries it far away from the defendants' suggested location. Snack, the master, marked the spile when the diver told him about it, so as to avoid it later. He puts it 6 feet from the bunch of spiles to the north, and about 6 or 7 feet on an offshore slant from them. Smith, for defendants, places it a little out from line of dock, 6 or 7 feet northeast. Reid, one of the defendants, was told by the diver where the spile lay, and he places it at or near "X" on defendants' map. This map only represents guesses as to the actual location of the sunken spile and of the bunch of spiles to which the bow of the scow was fastened, for the former is said to be "about at X," and the latter had disappeared before the surveys for the map were made.

From all the testimony, I conclude, that the sunken spile was from 6 to 10 feet northerly and a little easterly from the original bunch of spiles. It is not important, however, whether it was a little easterly of, or on a line with, or a little westerly of, a line along the edge of the dock, continued northerly through the bunch of spiles. The libelant was invited to use the dock as a mooring place, and for the delivery of freight. It was also invited to fasten its scow to the bunch of spiles on the north. The scow was so constructed that it could not have been properly moored at such a narrow dock without extending at least a dozen feet northerly of that bunch of spiles, and a very slight outward swing of the stern must inevitably have thrown the bow somewhat to the westward of a line following the face of the dock, and continued to the north. It may also be fairly assumed that the bunch of spiles was a little further toward the west than appears on the map.

The proprietor of a dock has no right to invite a boat to use that berth for business purposes when the situation is such that no work can be done there without exposing the boat to great danger from an existing defect, which could have been discovered and removed by the exercise of a fair degree of prudence. To permit so dangerous an object as the sunken spile to remain where any person has attempted to locate it constitutes a breach of duty

and an act of negligence for which the defendants must respond. There is no evidence worthy of discussion which shows that the libelants were at fault in any respect.

Let a decree be entered for the libelants.